```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
TAILWIND MANAGEMENT LP,

                        Plaintiff,                14-cv-9971 (PKC)

        -against-                                 MEMORANDUM
                                                  AND ORDER

AKORN, INC.,

                        Defendant.
-----------------------------------------------------------x
```

CASTEL, U.S.D.J.

        Plaintiff Tailwind Management LP ("Tailwind") brings two claims related to an Agreement and Plan of Merger (the "Agreement") that it entered into with defendant Akorn, Inc. ("Akorn"). Under the Agreement, Akorn agreed to pay $440,000,000 for Tailwind's ownership interest in a pharmaceutical company, VPI Holdings Corp. ("VPI"), subject to post-closing adjustments. The parties have since disagreed as to the appropriate post-closing adjustments and the methodology used for calculating them.

        Tailwind and Akorn both agree that an expert accountant (described in the Agreement as the "Accounting Arbitrator") and not this Court must review their competing calculations and resolve the disputes' merits. However, in its Amended Complaint (the "Complaint"), Tailwind seeks relief directed to the parties' obligations to exchange information prior to presenting their claims to the accountant. The Complaint alleges that Akorn has failed to provide Tailwind with access to certain books and records, as required by the Agreement, and seeks an order specifically requiring Tailwind to disclose these materials. Tailwind also seeks declaratory judgment requiring Akorn to submit a post-closing adjustment calculation in a manner that is purportedly consistent with the Agreement's accounting standards.

Akorn moves to stay Tailwind's claims pending the resolution of the post-closing adjustment dispute. In the alternative, Akorn argues that the action should be dismissed pursuant to Rule 12(b)(6), Fed. R. Civ. P., on the grounds that Tailwind has breached the Agreement, and therefore is equitably estopped from bringing its claims.

For the reasons explained, the Court concludes that Tailwind's claims fall within the Agreement's narrow provision requiring the "Accounting Arbitrator" to resolve the parties' disputes over post-closing adjustments. They are properly brought before the accountant and not to this Court. Akorn's motion is granted, and the action is stayed pursuant to 9 U.S.C. § 3.

BACKGROUND

Tailwind is a limited partnership with members that include citizens of New York, Connecticut and New Jersey. (Compl't ¶ 2.) Akorn is a Louisiana corporation with its principal place of business in Illinois. (Compl't ¶ 3.) Subject matter jurisdiction is premised on diversity of citizenship. (Compl't ¶ 4.)

Akorn and Tailwind entered into the Agreement on May 9, 2014. (Compl't ¶¶ 1, 7.) VPI and Akorn's acquisition subsidiary, Akorn Enterprises II, Inc., were also parties to the Agreement. (Compl't ¶ 7.) Under the Agreement, Tailwind was to receive a cash payment of $440,000,000 in exchange for all of its equity interest in VPI, with the resulting entity owned and controlled by Akorn. (Compl't ¶ 8 & Agrmt. § 1.6(a)(i).) New York law governs the Agreement. (Agrmt. § 12.10.)

Sections 1.6 and 1.8 of the Agreement provide for a post-closing adjustment to the purchase price, based on a calculation of Final Working Capital. (Compl't ¶ 9; Agrmt. § 1.8(b).) The Agreement establishes four steps to resolve any differences in the parties' post-closing adjustment calculations.

<u>Step One.</u>  Within 45 days of the closing date, Akorn is required to deliver to Tailwind a Final Closing Statement.  (Agrmt. § 1.8(a).)  The Final Closing Statement is to be prepared in accordance with GAAP, and contain "certain information set forth in financial statements prepared by VPI and attached as exhibits to the [Agreement] . . . ."  (Compl't ¶ 10 & Agrmt. § 1.8(e).)

On September 26, 2014, Akorn submitted the Final Closing Statement to Tailwind.  (Compl't ¶ 12.)  According to Tailwind, it "provided for a large payment to Akorn." (Compl't ¶ 12.)  Tailwind alleges that the Final Closing Statement was not prepared in a manner consistent with section 1.8(e) of the Merger Agreement, and that Akorn has admitted as much in a telephone conversation.  (Compl't ¶ 13.)  Specifically, Tailwind alleges that Akorn did not use "the same accounting principles, practices, classifications, procedures, policies and methods" that VPI used in preparing its financial statements.  (Compl't ¶ 13.)  Tailwind alleges that Akorn has, as a consequence, understated Net Working Capital by $7,248,535.  (Compl't ¶ 13.)

<u>Step Two.</u>  Within 45 days of receiving the Final Closing Statement, Tailwind may deliver a Dispute Notice explaining "in reasonable detail" the basis for any dispute over the Final Closing Statement.  (Agrmt. § 1.8(b).)  Under the Agreement, Akorn is to provide Tailwind with access to VPI's books and records in order to facilitate review of the accounting methodology of the Final Closing Statement.  (Compl't ¶ 11 & Agrmt. § 1.8(c).)  Specifically, section 1.8(c) states that Akorn will permit Tailwind to review:

> (i) the books and records of [VPI and its subsidiaries], (ii) the working papers related to the preparation of the Final Closing Statement (including the determinations included therein) and (iii) the financial records, accounting personnel and advisors of [VPI and its subsidiaries], in each case in order to facilitate . . . [Tailwind's] review of the Final Closing Statement.

(Compl't ¶ 11 & Agrmt. § 1.8(c).)  If Akorn "does not provide any material papers or documents relating to the calculations underlying the Final Closing Statement that are reasonably requested" by Tailwind, the 45-day period is automatically extended until after such materials are provided.  (Agrmt. § 1.8(b).)

In a letter dated October 9, 2014, Tailwind requested that, pursuant to sections 1.8(b) and (c), Akorn provide access to VPI's books and records, so that Tailwind could further review the Final Closing Statement.  (Compl't ¶ 14.)  In a letter of October 22, 2014, Akorn gave Tailwind certain information about VPI's financial records, which Tailwind alleges confirmed Akorn's failure to properly calculate the Final Closing Statement.  (Compl't ¶ 15.)

By way of a letter dated November 14, 2014, Tailwind sent Akorn a "Dispute Notice" that recited objections to the Final Closing Statement.  (Compl't ¶ 16.)  On November 24, 2014, Tailwind requested, pursuant to section 1.8(c), further information from Akorn concerning the accounting methodology of the Final Closing Statement.  (Compl't ¶ 17.)  It also requested information concerning the methodology that Akorn used in preparing an SEC filing on Form 8-K concerning the transaction, which, Tailwind alleges, appeared to use accounting principles that did not conform with the Agreement's prescribed methodology.  (Compl't ¶ 17.)

Step Three.  After Tailwind delivers a timely Dispute Notice, Akorn and Tailwind "shall negotiate in good faith during the thirty (30) day period after delivery" to resolve each dispute.  (Agrmt. § 1.8(b)).  If, however, Tailwind does not deliver a Dispute Notice within the allotted time, the Final Closing Statement "shall be final, binding and conclusive on the parties . . . ."  (Agrmt. § 1.8(b).)

<u>Step Four.</u>  If the parties cannot resolve their differences following good-faith negotiations, the Agreement gives Ernst & Young LLP the exclusive authority to resolve all remaining objections to the Final Closing Statement.  The relevant language states in full:

> If [Akorn] and [Tailwind], notwithstanding such good faith efforts, fail to resolve all of the Objections within such thirty (30) day period (or such longer period as they may mutually agree), then at the end of such period [Akorn] and [Tailwind] shall jointly engage Ernst & Young LLP (the "*Accounting Arbitrator*"), to review and resolve exclusively all of the unresolved Objections (and no other matters contained in the Final Closing Statement) (acting as an expert and not an arbitrator) in accordance with this Agreement (including Section 1.8(e)) as soon as practicable thereafter (but in any event within thirty (30) days after engagement of the Accounting Arbitrator).

(Agrmt. § 1.8(b).)

Count I of the Complaint seeks an Order directing specific performance giving Tailwind access to "all relevant information, and enjoining any efforts by Akorn to maintain any proceeding relating to the Dispute Notice prior to complying with its obligations to provide such information."  (Compl't ¶¶ 18-24.)  Count II seeks declaratory judgment stating that the Agreement requires Akorn to prepare the Final Closing Statement using methods consistent with those that VPI used to prepare its financial statements, and requiring Akorn to submit a Final Closing Statement consistent with section 1.8(e) of the Merger Agreement.  (Compl't ¶¶ 25-30.)

DISCUSSION

When an action raises an issue that must be decided in arbitration, the district court "shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement . . . ."  9 U.S.C. § 3.  "These provisions are mandatory: '[b]y its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts shall direct the parties to proceed to

arbitration on issues as to which an arbitration agreement has been signed.'" Genesco, Inc. v. T. Kakiuchi & Co., 815 F.2d 840, 844 (quoting Dean Witter Reynolds Inc. v. Byrd, 470 U.S. 213, 218 (1985)).  Because the parties agree that Ernst & Young, acting as "Accounting Arbitrator," must ultimately resolve their differences as to post-closing calculations, and no federal statutory claims are asserted, the threshold task before this Court is to "determine the scope" of the arbitration clause.  See Id.

    The Agreement contians a narrow dispute-resolution provision that requires Ernst & Young to act as an "Accounting Arbitrator" that will "exclusively" resolve the parties' differences over post-closing adjustments.  (Agrmt. § 1.8(b).)  Courts enforce arbitration clauses and similar dispute-resolution provisions based on the parties' intent, as manifested in the language of the contract.  See, e.g., McDonnell Douglas Finance Corp. v. Pennsylvania Power & Light Co., 858 F.2d 825, 831 (2d Cir. 1988).  Narrow clauses that are limited "to specific types of disputes" must be construed differently than broad arbitration clauses.  Id. at 832.  When a narrow provision is at issue, courts "must be careful to carry out the specific and limited intent of the parties."  Id.  "[I]f reviewing a narrow clause, the court must determine whether the dispute is over an issue that 'is on its face within the purview of the clause,' or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause."  Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc., 252 F.3d 218, 224 (2d Cir. 2001).  "Where the arbitration clause is narrow, a collateral matter will generally be ruled beyond its purview."  Id.; see also Cytec Indus. Inc. v. Allnex (Luxembourg) & CY S.C.A., 2015 WL 3762592 (S.D.N.Y. May 15, 2015) (alleged breaches of representations and warranties were contract claims to be reviewed by the court and not an independent accountant, even though claims affected calculation of final purchase price); Severstal U.S. Holdings, LLC v. RG Steel, LLC, 865 F.

Supp. 2d 430, 439-44 (S.D.N.Y. 2012) (disputes were to be decided by accountants because they were "a function of the agreed-upon calculation methodology," as opposed to compliance with contractual representations); E*Trade Fin. Corp. v. Deutsche Bank AG, 631 F. Supp. 2d 313, 378-79 (S.D.N.Y. 2009) (distinguishing breach of contract claims from "narrow disagreements over discrete accounting issues susceptible to resolution by an independent accounting authority."); Zachariou v. Manios, 68 A.D.3d 539, 539-40 (1st Dep't 2009) ("When reviewing a narrow arbitration clause, the court must determine whether the subject of the parties' dispute is on its face within the purview of the clause or is a collateral matter connected to the main contract.").

In this case, the claims raised by Tailwind fall within the limited subject matter to be addressed by Ernst & Young, acting in its capacity as an expert accountant.  Both claims go toward whether, as alleged in the Complaint, Akorn has used "improper accounting methodology" in preparing the Final Closing Statement.  (Compl't ¶ 13.)  As noted, Tailwind and Akorn both agree that the merits of their disagreements ultimately must be decided by Ernst & Young.  (See, e.g., Pl. Mem. at 2 ("To be clear, Tailwind will promptly proceed to the accounting arbitration process to resolve any remaining dispute when and if Akorn turns over the required documents and a properly formatted Final Closing Statement."); Def. Mem. at 9 (describing the parties' disputes as "clearly arbitrable").)

Count I, in which Tailwind seeks "an Order compelling Akorn to provide all relevant information, and enjoining any efforts by Akorn to maintain any proceeding relating to the Dispute Notice prior to complying with its obligations to provide such information" (Compl't ¶ 20), is properly resolved by Ernst & Young.  The Complaint, while not identifying categories of materials and documents that Tailwind seeks, also notes that Akorn has provided "certain

information" related to VPI, which, Tailwind argues, "confirmed" that Akorn's Final Closing Statement "was not calculated using the required accounting principles, practices, classifications, procedures, policies and methods." (Compl't ¶ 15.) In its capacity as Accounting Arbitrator, Ernst & Young is positioned to determine which books and records are "relevant." (Compl't ¶ 20.)

As a general matter, "'procedural questions which grow out of the dispute and bear on its final disposition' are presumed to have been committed to determination by the arbitrator." Seed Holdings, Inc. v. Jiffy Int'l AS, 5 F. Supp. 3d 565, 580 (S.D.N.Y. 2014) (Koeltl, J.) (quoting Howsam v. Dean Witter Reynolds, Inc., 537 U.S. 79, 84 (2002)).  The books and records sought by Tailwind implicate procedural issues tied to the parties' competing calculations of the post-closing adjustments, and are properly raised before Ernst & Young. Moreover, as alleged in the Complaint, the materials that Akorn has already provided to Tailwind have "confirmed" Tailwind's belief that Akorn's calculations are inconsistent with the Agreement. (Compl't ¶ 15.) Determining which books and records are necessary to properly calculate the post-closing adjustments will have at least some overlap with the merits of the parties' dispute – an issue encompassed by the Agreement's narrow arbitration provision.

Count II goes directly to the merits of the parties' conflicting calculations. It asserts that Akorn breached the agreement "by providing a Final Closing Statement that was not based on the required accounting methodology," and seeks declaratory judgment directing Akorn to submit a revised statement that conforms to the Agreement. (Compl't ¶¶ 28, 30.) This claim would task the Court with adjudicating the merits of Akorn's methodology and whether it complies with the Agreement. Under the label of a declaratory judgment claim, Tailwind would have this Court decide whether Akorn's post-closing adjustments are correct. Such a ruling

- 9 -

would supersede that the Agreement's requirement that Ernst & Young "review and resolve exclusively all of the unresolved Objections . . . ." (Agrmt. § 1.8(b).) The issue must be decided by the Accounting Arbitrator.

CONCLUSION

The defendant's motion to stay this action is GRANTED. (Docket # 15.) The Clerk is directed to terminate the motion and to stay this action. The Clerk shall administratively close the case, subject to reopening upon written application of either party within 14 days after the decision of the "Accounting Arbitrator."

SO ORDERED.

_____
P. Kevin Castel
United States District Judge

Dated: New York, New York
June 24, 2015